Next case on this morning's docket is the case of Maurice Killian Sr. and Nina Killian v. City of Centralia et al. And we have Mr. Killian for the appellant, Mr. Maurice Killian Jr. for the appellant. And we have Mr. Daniel Price for the appellees. Mr. Killian, when you're prepared to begin, you may. Good morning. Good morning. I would first like to thank this honorable court for indulging in my schedule. The case was originally set to a full argument in April of the mainland China, so I really appreciate the court's consideration in that respect. When I first received notice of the April hearing, I thought, well, you can request a continuance or you can waive the oral argument. And the reason I thought about initially waiving the oral argument is that, well, one, I was comfortable with the brief trial in this case. I spent a great deal of time considering the issues and intended to be thorough in the presentation of the appellant's position in this case. And that might be the reason the brief ran about 50 pages, because I tried to explore every possible issue that was germane to the three issues I presented in this case. And also, every case should not have an oral argument. And the reason in this case I made a point to move from continuance of the hearing date in April was primarily because of the appellee's counsel's brief. After reading the brief, there were some allegations made in the brief that I took personally. One, it reduced me to a pro se litigant. Two, it decided the case about the proposition that attorney fees should be denied because of, impliedly, unscrupulous conduct. And because of the intended argument set forth in the counsel's brief to the appellant's brief, I thought it was imperative that I try to appear at oral hearings. And so I didn't waive oral hearings because counsel hadn't waived oral hearings, so I thought it was imperative that I be here today. And so that's the primary reason I expressed it through oral arguments. Essentially to address the issues of my status as a pro se defendant. Mr. Killian, did you intend to be compensated for your services and how? Yes, Your Honor. I intended to be compensated for my services. And that's why you filed a petition? Yes, I filed a petition for attorney fees. And I'd like to add something. When the court ruled on attorney fees, I was somewhat surprised by the ruling. I was a little bit caught off guard at the hearing regarding some of the questions he asked because I didn't anticipate the court taking that stance. What I told the trial court, the court when I told the trial court, that I told my father I was going to ask the Roscoe Meeks for payment of attorney fees. And that's the truth. And also I told him that I would not go after him for payment of fees. So personally you didn't intend to collect the fees from your father in the event that the judge didn't award statutory fees. But you intended to charge or be compensated for your fees under the statute. That's correct, Your Honor. And it has nothing to do with the fact that I was representing my father because I've done this in other cases. 30 years of practice, I've done it for people pursuing child support payments. I won't take a retainer fee. Obviously I'll get the fees from the other party. It's up to the father. So nothing out of the unusual I've done in this case. I've done this 1,001 times. And as I said in my brief, I don't think there's anything relevant, any relevancy attributable to the fact that this is my father. Does it matter what you would intend to do with the money if you got it? The money would have been for attorney fees. I understand that, but I'm not quite understanding where you're going with trying to, I guess, urge that you would have done the same thing with possibly another client that wasn't related. Yes, I did it all the time when I practiced law. I haven't practiced law since 2000, but I've done it in my litigation history. I've done it a thousand times. Not a thousand, but I've done it several times in the past. There's nothing unusual about what I did in this case. But what I think the trial court is doing is a mandatory attorney fee provision. And I think the trial court is playing a game of semantics. When I first read trial court's findings, all I could think about, barring from the philosophers, too, when you talk about linguistics and linguistics philosophy, I thought about linguistic redundancy. You know, to say this is a podium versus someone compelling me to say you must say it's true this is a podium. And to say that there are mandatory attorney fees. The court by analogy was saying that, yes, there's mandatory attorney fees, but I'm going to attach these conditions as subsequence. And the problem is that in law, linguistic redundancies are dangerous because when you add to, modify, or alter the statutory language of the legislative command, then you, in effect, challenge the legislative intent and the command itself. So I was a bit surprised by the ruling in this case. The trial court based its decision to not assess attorney fees by saying that the evidence in its totality does not suggest to me that the violations are willful. That's not an element. Willfulness is not an element. So the trial court's use of willfulness has no relevance to this appeal on the issue of attorney fees because it's an injunction. It's the third time we've had this appeal, is that correct? I agree. And I routinely lose at the trial court level. Trial court never felt they were in violation of the zoning code. Trial court didn't think they were in contempt of court. And the trial court reiterates with denying attorney fees and more adequate damages that the appellate court found them in contempt of court, not the trial court. The appellate court also found them as willful and consummatious, even though that's not an element of assessing attorney fees for a violation of an injunction. That's correct. It's correct. It's a mandatory statute. It's a mandatory attorney fee provision. And I think I explained the legislative history of that provision. It used to be discretionary, but for reasons the legislature changed it to mandatory, which I think is mostly attributable to the public policy that associates with the particular statute. Would you want to address for us the reasonableness of the fine? The fine. Or I guess your intention that it's not reasonable. I characterize the fine as a $750 fine for a 75-day period. And I looked at the fact that there are five defendants. So I thought on a per diem basis, the court essentially reduced the – the fine is essentially $2 per day for each defendant. Now, what occurs here at the public court level is also important because I have a pending petition for judicial cause in Marion County. I want to get a clear ruling and understanding on what the appropriate penalty is in this case. Now, from my perspective, $750 is unreasonable. It's simply not fair. First off, when I would question a common person about it, a non-legal person about it, I would get the sense that they also recognize that the fee, that the fine was unreasonable and somewhat ridiculous. And then when I look at the history of this case, difficulties getting the zoning code in force, the difficulties trying to close this business down and bringing the appellees in full compliance with the order, that in and of itself should make the $750 fine unreasonable. What I said in my brief is this. The fine should compel performance. And I don't know how you can tell five defendants and three businesses – you can compel their performance, the performance of five businesses and three – excuse me, five defendants and three businesses by requiring them to pay a $750 fine. Also, I cite examples of what are reasonable fines in this variety of cases. I looked at city ordinances, county ordinances, and a few cases, and what I found to be the rule of thumb was a fine range of $200 to $500 per week to $200 to $500 per day. So the range is $200 a day to $500 a week. And if that's the range – if I substantiate it, and I think I did in my brief that that is the applicable range, then $750 for a 75-day period would be unreasonable fine because it doesn't compel. And it did not compel them to come into full compliance with the court order. And it never will. And I think I equate the $750 fine to requiring them to pay $2 a day for a gallon of gas. That's the best example I can think of. It doesn't compel. And the fine should compel. It does the opposite. The effect of the fine of $2 per day is to prolong the noncompliance. It makes noncompliance affordable. If you look at the variety of the, for instance, the EPA cases, the fine has to be compelling. If not, then it becomes an affordable business clause. Businesses will continue their nonconforming uses. So at $2 per day, it's not compelling and it's not going to get the job done. And that's essentially my argument. And I don't see how a $750 fine could ever be added to this case. We've been trying to bring them into compliance with the code for over 20 years. I've lost track of the time. And they're still not in compliance. And we're going to go back to Marion County and do this again. There's a pending petition for judicial clause there. And we're in the same situation we were in four or five years ago. Nothing's changed. And nothing's going to change with a $750 fine. What did your training fees amount to? I think they were minimal. It was $2,077.75. And you know what I did? I anticipated the trial court denying internal fees. So I said, well, just pay $100 per hour. I'm not trying to make a living. That's what you were, you showed was your hourly rate. Yes, I just said $100 per hour to eliminate, I was trying to eliminate reasons for the trial court to deny me because I'm routinely denied motions, hearings. I routinely lose in Marion County in this case. So I said, well, $100 per hour attorney. Because I think that it would be difficult to say the fees are unreasonable at $100 per hour. So I'm just trying to eliminate new challenges. Outside of that, as I said earlier, I'm very comfortable with the brief. I've explored all these issues in the brief. I don't feel that Appellee's brief has addressed some of my concerns in the brief, such as the standard burden of proof and issues of public policy. And even on the issue of the fees. And also counsel's position that the fees should be awarded or denied because I'm pro se and I've done some sort of wrongdoing. That won't do because I haven't done any wrongdoing. I think I mentioned in my brief that the family relationship is not relevant. And if there was some kind of relationship, fiduciary trust, family, whatever, then there's got to be a breach of that relationship and there's got to be a wrongdoing on behalf of counsel to even consider denying attorney fees. And also this is a simple attorney fee case. It's not of a complex variety. I mentioned in the brief, you know, the complicated fee shifting and fee splitting arrangements. This is a very simple issue. Whether it's a mandatory attorney fee and whether the petition for attorney fees, I sustained my burden on that petition, which I did. I'm confident I did. And also there's no objections from anyone regarding the amount of attorney fees. What they're saying is that, well, in essence what they're saying is that the attorney fee should be awarded but for, he didn't charge an attorney fee. And that's a semantic angle. It's semantics. That's all it is. You say the linguistic or discursive approach to the problem. But outside of that, I am comfortable with the brief. I think I would support these issues. I don't think they've been addressed by counsel or appellate. And unless there's any other questions, I'll reserve any other minutes for reply. I don't think there are any further questions. You'll have the opportunity to rebut. Thank you. Mr. Price? May I please record? Yes. Good morning. Good morning. I'm obviously upset, Mr. Killian, with the content of my brief. I assure you that was neither my intention nor, until I walked in here today, did I have any idea that had occurred. Well, I think you may be upset because he hasn't been paid for his services. Well, you know, that comes to all of us at different times in the practice of law. And I've tried to confine my brief to the issues as I saw them. You know, and Maurice filed a 50-page brief that addressed a lot of issues that the trial court didn't address. He wants to talk about them. I guess that's his prerogative. He's got 50 pages. But it seems like the right thing to do when you file a brief is to try to address the question that the trial court raised, and it seems like it would be important for you. Well, I have a real basic query, and that is, why would an attorney file a petition to be compensated for attorney fees and then have the argument that he didn't expect to be compensated for attorney fees presented to it? Well, the statute says that any award under the zoning statute would be made to the plaintiff for a reasonable fee that are the services of the plaintiff's attorney. Are you saying that $100 an hour is unreasonable? I never said that in the trial court. I'm not saying it here. By the way, it's $150. But I didn't say that was unreasonable either. It's that $829.30 I was just looking at. Never made that argument, no. The actual statute says that the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. On page 8 of my brief, that's exactly right, Your Honor. And the point of it is, that's an award to the plaintiff. And in this case, the plaintiff didn't have any attorney fees. Well, isn't that, maybe we are talking about semantics, because I'm reading testimony, and I have not read it from the record, wherein he makes the statement, Mr. Killian, that he expected to be compensated for his services under the statute. And you can say that about any case, but if you don't have an arrangement, where you're not going to be compensated by your own client. Well, I think the arrangement was that he wasn't going after his father, meaning collect the money in the event that he wasn't compensated under the statute. Well, clearly. Would you agree with that?  My testimony is, he said he wasn't going to charge his father, and he'd go after me. Meaning that he would not go and collect from his father, or take his father to court. That he represented his father for 15 years and had no intention of charging him. Does that mean he did not intend to get compensated for his services under the statute? Well, that's a subjective intent that I couldn't address. I mean, he says that today. Well, why did he file the petition to collect attorney fees? Isn't that an inconsistent action with them intending to get compensated for those services? Well, yeah, I guess if anybody files a petition and intends to be compensated, it doesn't necessarily indicate a right to compensation. I mean, there has to be an enabling statute or some other basis for that award to be made. And don't we have the enabling statute when it says that the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney? Yeah, but the plaintiff had no sum of money for a plaintiff's attorney incurred. The plaintiff didn't ever have to pay. Counsel, I understand the Illinois Bar is pushing for pro se work for people that can't afford cases. So then, more or less, you would make a blanket statement then that a pro se attorney could never collect a fee. Wouldn't that be an order? Well, I think that's overly broad. No, I mean, that's basically what we're, in a way, saying. Well, I mean, no, I don't think so, Your Honor. There are certain statutes which, you know, make it very specific that a prevailing party can be awarded. So it's strictly under that statute that it sets up. I think the statute. Not the idea that the attorney never, because most pro se attorneys never intend to collect. But. That's a good observation. Stated before you as one of those attorneys on this case, as a matter of fact. I understand, I understand. Yeah, I mean, that's just kind of how this thing is all played out. I'm, the trial court has said that this would be a windfall in this situation. And I cited the Hammer case, which was that Freedom of Information Act case, which apparently upset Mr. Killian. But I cited it for the policy that it. But that, in Hammer, he represented himself. He represented himself. He represented his father. And I'll tell you what, that's why I put in the things that Judge Itfast observed during the course of this trial. This was a lot more like a person representing his own interests than it was in representing his wife. It was his parents. Sure. And so we can't, it's hard to separate that. It certainly is. But his statements are very clear in the respect that he says he intends to get money from the Meeks if he prevails under the statute. Those are very clear. That doesn't mean he has a right to. I read the statute as saying he has a right to collect and pay for his services. It doesn't say that an attorney can be awarded attorney's fees. It says the plaintiff can. And if the plaintiff has no attorney's fees, and that's not dancing on the head of a pen, that's a real policy matter. Well, I understand what you're saying, but I do think we're down to semantics. Because he did say he intended to get reimbursed under the statute, which I understand as an intent to charge for his services. Now, whether or not in the event he lost, he was going to take his parents to court, it was very clear he was not. Of course not. Because he says that. And he's asked, in other words, legally he doesn't owe you any attorney fees in this case as of this minute. And he says no, only because I told him I would go after the Meeks for attorney fees, because if we prevail, I expect you to award a reasonable attorney fee. So aren't we really talking about semantics? We're talking about collection in the event that he loses, that he's not going to take his parents to court? Well, if you take it in the extreme, and you take it from the point of view of an examination of policy, I don't think so. If I'm driving a taxi in Illinois and I find some trivial zoning violation, and I knock on the alleged party that's being offended by this violation's door and say, hey, look, see what I see over here? You've got a zoning violation. Why don't I sign you up and sue them? And you'll never have to pay me, but we'll try to get the money out of them. And I make a living doing that. That policy is troubling, I guess I would say. And that's, you know, if you don't have any money out of pocket by the person trying to enforce the zoning offense, there's no policy that supports an award of attorney fees. That's my position. I think that was the trial court's position. Well, based upon it wasn't willful, which is not an element. Well, I think you're confusing that, Your Honor, in all due respect. That's what he said. I'm not going to award any payment to Maurice Killian, Sr. The attorney fees was requested, and I'm not going to grant that request. There's been a good face showing. It does not suggest to me that the violations are willful. Willfulness has nothing to do with the assessment of attorney's fees and the violation of an injunction. Well, he found in his order, which is found in page 2839 of the record, the written order of June 30th, that there was a violation of the injunction. And the only basis that he found in that written order for the failure to award attorney's fees was that no attorney's fees were incurred, as in paragraph 7. So I don't think that he took that into account in his ruling. That's probably a direct judgment. I mean, if you look at the written order, that doesn't provide the basis for it. But I can see. But you point out a matter I'd like to touch upon, and that is the question of this fine and what's appropriate and inappropriate with regard to the fine. And I think there's a very important fundamental matter that the court needs to consider. And that is, what was this violation that was proven? Please, I mean, that's the heart of the matter. Let me tell you what I think it was. When Roscoe Meeks testified that he wasn't going to move anything else. Well, I... He says, I'm not going to move any other business property. Okay. Was the order that you only had to move certain amounts? No. The order was that he had to move everything. I quite agree. And I'll tell you what, Roscoe said some things in there that he shouldn't have said. There's no question. He has paid the price for it. Maurice called him an adverse witness and made him mad. I watched the whole thing. That's what happened. And he's paid the price for that. How has he paid the price for it? Well, he's been found to be willful, consummatious. And fined $750. But what did he really do in terms of a violation, Judge? What was found to be on that property? Two red doors. Dumpsters for personal use. A couple of them. A workbench. A backhoe was there. An air compressor and a torch. That was all there was. That was all they've ever proven was actually there on the property. And that's never been tested at any time. Is it immovable? I'm sorry? Is it immovable? What? Those few things. They've been moved. They were just moved after the fact. Right. I mean, they were there like in a marsh. So they were there. Those few things. This business had 200 dumpsters and had been there for decades. The trial court found there was a good faith effort to move these things. And they didn't get everything. And Roscoe Meeks should have said what he said. I quite agree with you. He was speaking out of anger. I hope that's apparent to everyone. But, I mean, really, what's still there? And, you know, the police gets up here and he says to you, with no support of the record, this is still going on. Now, what that is, I don't know. But, I mean, if you look at what's actually proven, what's proven, what was found by the trial court, which should be the basis of your decision, it's that. Two doors, an air compressor, a workbench, and a torch, and a backhoe. It's not like there's a bunch of garbage trucks still parked up next to the family's house and all that sort of thing, or that there's an ongoing business there. There's no finding of that. There is no finding before this court of that. There's no finding that the violation constituted something like that. Now, that would be confirmatious. I certainly agree with you. If he said, I'm just going to stay here and I'm going to continue on and I'm not going to stop. But that's not what's before this court. And I think that's very important to take into account. And, you know, that's where the mission of the trial court becomes so important. Because even after this has been up here two times, and it's back to Judge Hickmast, he finds, at 839, that the Meeks actually took substantial steps to move. So, I mean, he recognized what they were doing and what they were trying to do. And he didn't, you know, $750 seems to fit these trivial things to me. And when you talk about what the fines are in different cases, you've got to look at what the infractions are in different cases. And this is, quite frankly, in the grand scheme of things, when you look at the whole picture of what had been there, a pretty trivial violation. And, you know, $750 was assessed and $750 was paid. So I don't know what else to say about that, except that I think there is some deference that should be given to the trial court, its determination of such a thing. Judge Hickmast was there. Judge Hickmast saw the parties. Judge Hickmast could assess this entire situation with his own eyes, a privilege that an appellate court does not have. That's highly significant here. And that's our position. Unless there's something else that one of you would like me to address, I'll sit down. Thank you. Thank you, Mr. Price. Thank you. Mr. Meeks, you have the opportunity to be back. Killian. I'm sorry, Mr. Killian. And in response to Mr. Price, first, the Meeks family have not brought themselves in full compliance with the order. I don't think they ever will put themselves in full compliance with the order without the court fully, the trial court fully employing its contempt policy. And that's been my problem since the turn of the new millennium. Because the trial court, the trial court doesn't want Mr. Meeks to pay attorney fees. The trial court wants to fine $750, which I think is equivalent to $22 per day for five defendants. There's a pending petition in Marion County, a rule so paused, and we're going to eventually take that up pretty soon. And the allegation in there, the same allegations made in the first petition which was so paused. We're afraid it will fully comply with the order. The property is still being used for business purposes, and that's going to be proven at trial court. A verified petition will apply. And if, uh, and that's a verified petition. Counsel can challenge me on that petition. That's not the appeal, Mr. Meeks. But I just wanted to state to the court that the violations are ongoing, and the fine of $750 are not adequate for addressing the ongoing violations. It's not coercive. It doesn't compel complaints. And as for attorney fees, yes, I want to be paid my time, but by compelling Ralph Meeks to pay a more substantial fine and pay attorney fees, it's a better chance of getting, accomplishing, of bringing Mr. Meeks' family into full compliance with the order. So, yes, I want to be paid attorney fees, but I want to compel the performance of full compliance with the order. Any other questions? No questions. Thank you again. Thank you. Thank you both for your recent arguments. We'll take them under advisement and under rulings.